676 So.2d 1038 (1996)
Nancy Ann LAYTON, Appellant,
v.
The FLORIDA DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES, Appellee.
No. 94-285.
District Court of Appeal of Florida, First District.
July 2, 1996.
Rehearing Denied August 7, 1996.
*1039 N. Albert Bacharach, Jr., Gainesville, for Appellant.
Robert A. Butterworth, Attorney General; William Peter Martin, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, Judge.
Appellant, Nancy Ann Layton, seeks reversal of an order dismissing her amended complaint with prejudice. Layton sought damages against the appellee, the Florida Department of Highway Safety and Motor Vehicles (DHSMV), for its negligence in failing to keep accurate records which led to her wrongful arrest for driving with a suspended driver's license. Because under Florida law DHSMV has no common law or statutory duty to Layton to maintain accurate records, we affirm.
On the evening of February 13, 1989, Layton was stopped in Alachua County for driving a motor vehicle with an inoperable taillight. A check of DHSMV records indicated to the detaining officer that she was driving with a suspended license. Layton was therefore arrested and was transported to Alachua County Detention Center where she remained for approximately 17 hours prior to her first appearance and release on her own recognizance on the afternoon of February 14, 1989. One week later, the charge against Layton for driving with a suspended license was dropped when it was learned that a computer error at DHSMV had caused her license to be improperly categorized "suspended."[1] Layton brought a damages action against DHSMV. In her amended complaint, Layton argued that DHSMV "has a duty to keep accurate records" and that this duty is "an operational level of government." Layton alleges further that DHSMV was negligent and breached the duty owed to her because it knew, or should have known, about any problem with the new data base system prior to her arrest, which was three days after the Department computers were converted to the new data base according to the allegations of the complaint. The trial court, concluding that DHSMV was protected by sovereign immunity, granted DHSMV's motion and dismissed Layton's amended complaint with prejudice on the authority of Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla.1985).
Section 768.28(5), Florida Statutes (1989), imposes liability upon governmental entities "for tort claims in the same manner and to the same extent as a private individual under like circumstances" would be subject to an underlying common law duty to exercise reasonable care. In Trianon, the supreme court emphasized that this waiver of sovereign immunity did not create a new tort cause of action but merely eliminated the immunity which had previously been granted to the government. 468 So.2d at 914. Thus, *1040 for governmental tort liability to exist, there must be an underlying common law or statutory duty of care to the plaintiff with regard to the alleged negligent conduct. In other words, the question of a duty of care is a question separate from the question of whether the governmental activity at issue is protected by operation of sovereign immunity. The latter question is a matter of determining whether the government was performing a discretionary versus an operational function. See, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979); Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989).
Our threshold question then is whether under Florida law DHSMV has a duty to Layton to maintain accurate records. No Florida case or statute has been cited which imposes on the state a duty to a licensed driver to maintain accurate records. In fact, Florida courts have consistently declined to hold governmental entities liable for a failure to maintain and provide accurate information in public records. For example, in Friedberg v. Town of Longboat Key, 504 So.2d 52 (Fla. 2d DCA 1987), the Second District affirmed the dismissal of a claim against the municipality for the alleged negligent misrepresentation by the city's building inspector regarding the issuance of a certificate of occupancy by concluding that "[n]o sufficient basis has been alleged in this case for a duty of the municipality to the third party plaintiff for the breach of which a private cause of action would lie." Id. at 53. In finding no legal duty, the Friedberg court applied the rationale adopted by the supreme court in Trianon by stating:
Just as building code compliance inspections are for the protection of the public as a whole and not individual citizens, see Trianon, 468 So.2d at 922-23, so also, we conclude, was any responsibility of the municipality here to maintain and provide information from records as to the issuance of certificates of occupancy following inspections for building code compliance. And just as the Florida Supreme Court in Trianon found nothing in chapter 553 ("Building Construction Standards") evincing an intent to give private citizens a right of recovery for negligent inspections, 468 So.2d at 922, so also do we find nothing in chapter 119 ("Public Records") evincing an intent to give private citizens a right of recovery for negligently maintaining and providing information from public records.
We agree with the argument of appellee that if there were such a duty by government to individual citizens under the facts of this case, the door would be opened to potentially multitudinous litigation with respect to the accuracy of information provided by governmental entities concerning a wide range of public records. The potential multiplicity of suits from the judicial establishment of a municipal duty to private citizens was a factor in Trianon weighing against the establishment of such a duty. 468 So.2d at 922. If there is to be such a responsibility, we conclude that it is the province of the legislature, not the courts, to create it. See Trianon, 468 So.2d at 922-23.
Id. See also, Chester v. Metropolitan Dade County, 493 So.2d 1119 (Fla. 3d DCA 1986)(the failure to fill out an accident report cannot give rise to tort liability since any duty to execute an accident report exists for the benefit of the public as a whole, and not for the benefit of the accident victims); City of Tarpon Springs v. Garrigan, 510 So.2d 1198 (Fla. 2d DCA 1987)(a city inspector's provision of incorrect information is not a basis for liability when the information is given as part of a discretionary decision).[2]
*1041 We conclude that the maintenance of DHSMV records is a function undertaken by the government for the public generally and that the duty to perform this function accurately runs to the public and not to individual licensed drivers. Accordingly, we hold that the state has no common law or statutory duty to Layton to accurately maintain motor vehicle records; Trianon and Friedberg, supra. The order of dismissal is AFFIRMED.
MINER and KAHN, JJ., concur.
NOTES
[1] Apparently, at the time Layton was stopped in Alachua County, DHSMV was in the process of converting or had finished converting from one computer data base to another, and a defective conversion program caused the error, which was not promptly detected.
[2] The Florida cases, in refusing to impose a duty of accuracy on a government entity maintaining public records which would run to users of the public records, are consistent with the general rule that a private information service provider is not liable for inaccurate data absent a "special relationship" with the injured party. See, Joseph R. Tiano, Jr., Comment, The Liability of Computerized Information Providers: A Look Back and a Proposed Analysis for the Future, 56 U.Pitt. L.Rev. 655, 672-675 (1995). Nevertheless, in addition to remedies under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681t, victims of a false credit report can bring a common law action for defamation. See, Northside Fire Extinguisher Service v. Wilson Davis Ford, Inc., 426 So.2d 55 (Fla. 2d DCA 1983); Levy v. Southeast Bank, N.A., 490 So.2d 1333 (Fla. 3d DCA 1986); Matthews v. Deland State Bank, 334 So.2d 164 (Fla. 1st DCA 1976); see generally, Virginia G. Maurer, Common Law Defamation and the Fair Credit Reporting Act, 72 Geo. L.J. 95, 99-111 (1983).